**E. A. HORSCHLER and Exa M. Horschler, his wife, Plaintiffs in Error,**

v.

**Elmer R. GRAHAM, Defendant in Error.**

No. 37300.

Supreme Court of Oklahoma.

Dec. 18, 1956.

Rehearing Denied Feb. 5, 1957.

Wm. T. Powell, Walters, for plaintiffs in error.

Funston Flanagan and Hubbell & Eubanks, Walters, for defendant in error.

DAVISON, Justice.

Plaintiffs, E. A. Horschler and Exa M. Horschler, his wife, brought an action for mandatory injunction to compel Elmer R. Graham to remove a levee or embankment erected by him which it is alleged blocks the drainage of flood water across his land and backs it up on plaintiffs' land causing damage to their crops. The trial court denied the injunction.

Plaintiffs appeal and contend that the judgment of the trial court is not supported by the evidence and is contrary to law.

The evidence shows that the plaintiffs are husband and wife and that they are the owners of the West Half of Section 24, and that defendant is the owner of Section 25 all in Township 4 South, Range 11 West, Cotton County, Oklahoma. There is a section line running east and west between Sections 24 and 25.

The land of both parties is located in the valley of Cache Creek and lies on the west side of said creek.

Sometime prior to the bringing of this action defendant erected a levee or embankment on the north side of said Section 25 beginning at a point about three hundred feet east of the Northwest Quarter of Section 25, thence running east a distance of three thousand feet thence extending from the east end thereof in a southeasterly direction a distance of two thousand feet. In the area involved Cache Creek flows in a southeasterly direction. Endless Branch, an ordinarily dry stream, runs in a southeasterly direction across the plaintiffs' land, and at a point about three-fourths of a mile east of the northwest corner of Section 25, turns east and somewhat north and at a point almost a mile east of the east boundary of plaintiffs' land turns south and joins Cache Creek. At the point of turning east another dry stream or slough runs southeasterly across the Northeast Quarter of Section 25 and water flows through this avenue when Endless Branch is flowing. All the land here involved except a small portion of the Northwest Quarter of Section 25 and the Southwest Quarter

of Section 24 is bottom land and is approximately level except for small variations, and is subject to overflow every time excessive rains occur in the watershed of Cache Creek.

The evidence shows that when Cache Creek overflows the water in its natural course flows in a southeasterly direction across plaintiffs' land thence across the section line above referred to on to defendant's land; that the erection of the levee or embankment by defendant retarded the natural flow of the water from plaintiffs' land and prevented it from flowing on defendant's land and backed it up on the land of plaintiffs thus increasing the depth of the water on plaintiffs' land and according to plaintiffs' evidence causes damage to crops planted and growing thereon.

Between the time of the filing of this action and the trial of the case two overflows of Cache Creek occurred, one in May 1955 and one in August of that year.

Howard Horschler, son of plaintiffs, was farming the land in question at the time of these overflows. He testified that at the time of the overflow of May 1955 he had some maize and cotton planted on plaintiffs' land. There was also some alfalfa growing on the land and that all of these crops were damaged by the flood; that the damage was caused by reason of the levee or embankment erected by defendant which prevented the water draining off of plaintiffs' land, and that such damage will occur every time Cache Creek overflows unless the levee or embankment is removed.

He further testified that the water which backed up on the land of plaintiffs by reason of the levee or embankment was still water and that still water will do no material damage to the land; that running water will do more damage to the soil than still water but that still water will do more damage to the crops than running water for the reason that it stays on the land for a longer period than running water. He however further testified that running water might have caused some damage to

the crops on the land if the levee or embankment had never been erected. Mr. Horschler's testimony in this respect is corroborated by his father and several other witnesses including a registered engineer.

Defendant concedes that he erected a levee and embankment along the north side of his land as above stated. It is his theory however that the erection thereof does not and will not in any manner injure or damage either plaintiffs' land or crops growing thereon, but will tend to slow the flow of the water and thus retard erosion and damage to plaintiffs' land and crops, and he so testified.

Defendant offered the testimony of five witnesses, all farmers who are now engaged in farming land in the overflow area of Cache Creek; who are familiar with the location of the land of both plaintiffs and defendant on the north side of his land; all of whom have had years of experience in farming overflow land, who all testified that while the levee erected by defendant obstructed the flow of water from plaintiffs' land and backed it up on their land, the erection of the levee will slow down the flow of water across plaintiffs' land and prevent erosion thereof and that since the water backed up on plaintiffs' land will be still water it will cause no more damage to crops growing on the land than swift water running across the land would have caused had the levee never been erected.

Marble J. Carpenter, a registered engineer, who surveyed the land in the overflow area here involved and surrounding area after testifying as to the area, the location of the streams above referred to and the direction in which the water flows in these streams and the direction in which the water will flow over the land of both parties when Cache Creek overflows, further testified that he observed the levee erected by defendant and testified that in his opinion the levee will not damage plaintiffs' land; that the levee will slow down the current of the water crossing their land and prevent erosion of the soil.

There is no dispute between the parties as to legal principles involved. They agree that the only question here involved is a question of fact as to whether the levee constructed by defendant will cause damage to plaintiffs.

The trial judge at the close of the evidence at the request of both parties viewed the premises and after so doing and after considering and weighing the evidence found that it was insufficient to establish that the erection of the levee or embankment by defendant damages either plaintiffs' land or crops growing thereon and entered judgment denying plaintiffs' application for injunction.

We cannot say this finding is clearly against the weight of the evidence and the judgment based thereon will not therefore be disturbed on appeal.

Judgment affirmed.